UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TINA REINIG, *et al*.

Hon.

Case No.

Plaintiffs,

vs.

United States of America,

Defendant.

---

**COMPLAINT**

**Introduction**

This case arises out of the May 19, 2020, Edenville Dam disaster occurring on the Tittabawassee River north of the City of Midland, Michigan. Plaintiffs' homes, businesses and property were destroyed in the flooding caused by the failure of the dam. The Federal Government, through decades of negligence and failure to act in accordance with its own statutory obligations, was a major contributing factor to this disaster. This lawsuit seeks to hold the Federal Government accountable for the damages it caused by its unconscionable conduct.

In 1993, the Federal Energy Regulatory Commission ("FERC") recognized that the Edenville Dam posed a substantial risk to Michigan residents and property owners living downstream from the Dam. At that time, FERC ordered the then-owner and operator of the Edenville Dam to make immediate improvements to the Dam to prevent a catastrophic breach or flood downstream. Without these repairs and upgrades, the Edenville Dam was a dangerous instrumentality.

In 2006, FERC, through its gross incompetency and deliberate indifference, transferred the license to operate this dangerous Dam to a new owner, Boyce Hydro Power LLC ("Boyce"). FERC, in transferring the license to operate, had a mandatory duty to ensure that this known dangerous instrumentality would be operated safely. Indeed, FERC had already established the Dam's dangers in 1993 under the previous owner and knew that Boyce was taking control of a Dam that posed an imminent threat.

After the Edenville Dam failed on May 19, 2020, FERC Chairman Neil Chatterjee was called before members of Congress on June 18, 2020. Chatterjee admitted that FERC had issued a license to Boyce to operate the Edenville Dam without complying with its mandatory statutory obligation to first determine if Boyce could manage, operate, and maintain the dam safely. FERC's failure to vet Boyce was another direct cause of this disaster because, if FERC had performed

its required due diligence, FERC would have determined that Boyce did not have the financial ability, competency or good faith motivation to make the dam safe or to protect the residents and property owners living downstream. Therefore, by FERC's own standards, Boyce was not qualified or eligible to operate a dam categorized as High Hazard.

For fourteen years after Boyce acquired its license, FERC allowed Boyce to defy numerous orders to make the dam safe. FERC knew that the Edenville dam was categorized as a High Hazard dam and a dangerous instrumentality, and it negligently entrusted this dangerous instrumentality to a recalcitrant, dishonest, under-capitalized, and incompetent operator.

On May 19, 2020, because of FERC's negligence, thousands of Michigan residents and property owners downstream suffered substantial property harm, and in some cases catastrophic injuries, when the dam breached and water generated a 25-foot wave and ensuing flood.

FERC also had a mandatory duty to ensure that Boyce complied with all safety and emergency regulations. FERC, aware of the predicted rainstorms moving into the Midland Region, knew of the dangers at hand and had the authority to order a drawdown of the reservoirs behind the Smallwood, Secord and Sanford Dams. If FERC had ordered drawdowns before May 20, 2020, the collapse of the Edenville Dam would have been prevented. FERC's negligence

in refusing to order a drawdown and fulfilling its monitoring duties also contributed to the damages alleged in this lawsuit.

FERC's negligence in this case spans multiple decades, dam owners, and Federal Administrations. The constants are FERC's statutory responsibility and the deteriorating condition of the dam that endangered the property and bodily integrity of the surrounding communities.

## Jurisdiction, Venue, Parties and Exhaustion of Administrative Remedies

1. Plaintiffs are property owners who experienced and continue to experience property damage and personal injuries caused by FERC's negligence in fulfilling its mandatory duties with regard to issuing a license for operation of the Edenville Dam and monitoring compliance with safety and emergency regulations by the Dam's operator.

2. This Court has subject matter jurisdiction over the Defendant because the United States of America is sued pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1).

3. Venue is proper in cases involving tort claims against the United States of America where the Plaintiff resides or where the act or omission complained of occurred. 28 U.S.C.§ 1402(b); 32 C.F.R. 759.32(a).

4. The acts and omissions complained of occurred in this Judicial

District.

5. On May 13, 2022, Plaintiffs, through their counsel, submitted SF 95 administrative claims to the Federal Energy Regulatory Commission ("FERC") for personal and property damages arising out of FERC's negligent handling of Boyce as the operator of the hydroelectric dams at issue.

6. Counsel for Plaintiffs received a letter dated October 17, 2022 from Anton C. Porter, Executive Director of FERC, denying the administrative claims.

7. This lawsuit is timely filed within 6 months of the first notice of the denial of the administrative claims.

## STATEMENT OF FACTS

### History of FERC's Transfer of its License to Boyce and its 27-year Knowledge that the Edenville Dam was a Dangerous Instrumentality

8. Wolverine Power Corporation ("Wolverine"), a dissolved corporation, was a Michigan corporation that originally held the FERC license to operate the Edenville Project/Dam. Wolverine also owned the properties on which the Edenville Dam and other dams were located.

9. In an August 6, 1993 letter from the Commission's Office of Energy Projects, Division of Dam Safety and Inspections, Chicago Regional Engineer ("Regional Engineer") to Wolverine, FERC advised that the spillway capacity of

the Edenville Project did not meet the Commission's guidelines for passing the amount of water known as "probable maximum flood" ("PMF").

10. FERC was aware of this life-threatening deficiency in the Dam's spillway capacity for almost 27 years prior to the May 19, 2020 Edenville Dam disaster.

11. From 1993 to the day the Edenville Dam collapsed on May 19, 2020, FERC knew the unrepaired dam was a dangerous instrumentality.

12. Synex Energy Resources Ltd., a subsidiary of Synex Power, Inc., reportedly acquired the real estate assets of Wolverine, including the Edenville Project, in a foreclosure proceeding in 2003. Synex Energy Resources then transferred those real estate assets to a new subsidiary, Synex Michigan, LLC.

13. Synex Michigan, LLC thus acquired the operating business of Wolverine, including the purchase of Wolverine's remaining assets and the license to operate the Edenville Project/Dam from Wolverine on or about June 23, 2004.

14. In public filings, FERC has stated that the transfer of the Dam from Synex Energy to Synex Michigan "required prior Commission approval" and that "the parties failed to obtain such approvals inadvertently." *Wolverine Power Corp. Synex Energy Res., Ltd. Synex Mich., LLC*, 107 FERC ¶ 62,266, at p. 64,498 n.4 (2004).

15. On or about March 17, 2006, Boyce purchased 100 percent of the interests of Synex Michigan, LLC.

16. Synex Michigan, LLC changed its name to Boyce Hydro Power, LLC, ("Boyce") and filed a statement with the Commission on July 12, 2007 to this effect.

17. FERC has also admitted, through the written statements of then-FERC Chairman Neil Chatterjee, that FERC never investigated Boyce's financial capacity to operate the Dam. Letter from Neil Chatterjee, Chairman, FERC, to Frank Pallone, Chairman, H. Comm. on Energy and Com., at 2–3 (June 18, 2020).

18. The Boyce Projects are located on the Tittabawassee River in Gladwin and Midland counties, in mid-Michigan. The Secord Project is the most upstream of the Boyce Projects. The Smallwood Project is located approximately seven river miles downstream from the Secord Project. Boyce's now-unlicensed Edenville Project (formerly FERC Project Number 10808), is located approximately 13 river miles downstream of the Smallwood Project, at the confluence of the Tittabawassee and Tobacco Rivers. The Sanford Project (the most downstream of the Boyce Projects) is located approximately 11 river miles downstream of Edenville Dam.

19. The Edenville Dam is one of a group of four dams that were built in

1924 to generate hydroelectric electricity. It is located about 21 miles north of Midland on the Tittabawassee River.

20. In addition to electric power generation, flood control is widely recognized as another key reason for dams being added to the Tittabawassee River.

21. The other dams in the group are the Sanford, Smallwood and Secord.

22. All four dams are earthen embankments with concrete spillways.

23. The Edenville Dam was constructed in two sections: one embankment across the Tittabawassee River and one across the Tobacco River. The hydroelectric facilities built with this dam comprise 4.8 megawatts of total generation capacity. The electricity produced by the Edenville Dam has been sold under a long-term power purchase agreement with Consumers Energy, an investor-owned public utility. Water held by the dam formed a 2,600-acre reservoir called Wixom Lake. Water held by the Sanford Dam downstream formed the 1,569-acre Sanford Lake.

24. The three Boyce Projects and the former Edenville Project are closely linked to each other, sharing common ownership and hydrology. Indeed, FERC issued the operative licenses for all four projects on the same day, noting that it intended to coordinate treatment of these four "hydrologically-

related" projects in the future.

**FERC Subjected the Public to An Unreasonable Risk of Harm By Licensing And Permitting Boyce To Operate The Dams Without Regard To Public Safety**

25. The four projects also are linked by Boyce's troubled compliance history. Its compliance failures at the formerly licensed Edenville Project were particularly egregious, as Boyce ignored FERC staff's dam safety requirements for 14 years.

26. According to media reports, Boyce's primary interest in the Edenville Dam and the other dams was to use the properties as a tax shelter:

> [Boyce owner Lee] Mueller and his relatives needed to reinvest money from the sale of an Illinois property in less than a year-or pay $600,000 in taxes to the IRS. Eventually, a solution came to Mueller, an architect who lives in Las Vegas, and his cousin, Michel d'Avenas, a California musician who is the son of a French count and is now known as the Pebble Beach Bagpiper. They would avoid taxes by purchasing four small hydroelectric dams in mid-Michigan near Midland ....The cousins had 45 days to find alternative sites and six months to buy one, or they risked having to pay more than $600,000 in capital gains taxes. Mueller and his associates identified the four Midland dams and buildings in Indianapolis and Houston as options and bought the dams in 2006 after borrowing money to complete the purchase.

27. FERC routinely found Boyce's plans for auxiliary spillway work to be insufficient.

28. Rather than fund the necessary repairs and upgrades to its dams, Boyce attempted to coerce community members into paying.

29. In August 2010, the Sanford Dam's earthen dike began to seep. The next year, "Lee Mueller (Owner of Boyce) sa[id] he won't pay for the estimated $83,000 repair. Footing that bill is up to property owners and businesses that benefit from the 1,250-acre recreational impoundment in Midland County, he argue[d]....He sa[id] if funds aren't raised for the repair work, Boyce Hydro will surrender its license to operate the dam and permanently drain Sanford Lake." One property owner characterized Boyce's actions as follows: "He's holding the dam hostage for someone else to fix it. Because he doesn't want to fix it."

30. In 2012, Tobacco Township, a local government entity, sued Boyce for its failure to make repairs to the Edenville Dam.

31. While Boyce had assured FERC that it would complete construction on auxiliary spillways in 2014, and 2015, it missed the 2014 deadline.

32. FERC promulgated a plan to have Boyce construct one of the spillways in 2015. Boyce missed those deadlines as well. The two auxiliary spillways were never constructed.

33. Not only did Boyce fail to construct the required spillways, it failed to even submit "complete and adequate plans" for the work.

34. In 2015, Boyce failed to disclose to FERC that a spillway wall had failed. They attempted to repair the wall without reporting to FERC.

35. FERC learned of and cited Boyce for these failures, stating, "[t]he

licensee is presenting a serious risk to the infrastructure of this high hazard potential dam by performing unauthorized repairs and then providing no information about those repairs."

36. In 2016, an independent safety inspection report found that Boyce "should continue to work for review and approval of the existing spillway rehabilitation projects which will allow the dam to safely pass the 100% PMF."

37. FERC, in a 2017 Report, emphasized that:

> Boyce's failures caused a 'grave' risk for the 'potential loss of life and destruction of property and infrastructure': Given Edenville dam's high hazard potential rating, the potential loss of life and destruction of property and infrastructure is grave should the project not be maintained and operated appropriately, with consequences that could certainly affect the Village of Sanford, Northwood University, City of Midland, Michigan, and other areas downstream. The Commission's Dam Safety Guidelines require the project works to be designed to either withstand overtopping of the loading condition that would occur during a flood up to the probable maximum flood (PMF), or to the point where a failure would no longer constitute a hazard to downstream life and/or property. In the alternative, the capacity of the spillway must be adequate to prevent the reservoir from rising to an elevation that would endanger the safety of the project works. As summarized in an
>
> August 6, 1993 letter from the Regional Engineer to the prior licensee, the spillway capacity of the Edenville Project does not meet the Commission's guidelines for passing the PMF. The Regional Engineer has repeatedly directed the licensee to address the spillway capacity concerns at the project."

38. Consequently, in February 2018, FERC recommended revocation of Boyce's license for the Edenville Project/Dam. It said:

> The Commission's primary concern has been the licensee's longstanding failure to address the project's inadequate spillway capacity, which currently is designed to pass only approximately 50 percent of the PMF. Failure of the Edenville dam could result in the loss of human life and the destruction of property and infrastructure.

39. Finally, in 2018, due to the extreme hazards posed by the condition of the Edenville Dam and Boyce's callous indifference towards the lives and properties of others, FERC revoked Boyce's license to generate hydroelectric power from the Dam. FERC determined that Boyce "knowingly and willfully refused to comply with major aspects of its license" and had "repeatedly failed to comply" with directives to "develop and implement plans and schedules to address the fact that the [Edenville Dam's] spillways are not adequate to pass the probable maximum flood, *thereby creating a grave danger to the public.*"

40. FERC observed that "the licensee [Boyce] has displayed a history of obfuscation and outright disregard of its obligations. We do not often revoke a license, but the licensee has left us with no other way to vindicate the public interest here."

41. Upon revocation of the license, jurisdiction over the Edenville Dam

passed from FERC to the State of Michigan's Department of Environment, Great Lakes and Energy ("EGLE").

42. Because FERC retained jurisdiction over the Sanford, Secord and Smallwood Boyce Hydroelectric Projects/Dams, FERC and the State of Michigan had joint jurisdiction over the four Hydroelectric dam projects at the time of the Edenville catastrophe.

43. On or about May 19, 2020, the Edenville Dam failed, resulting in catastrophic flooding to downstream areas. The Edenville Dam failed so completely that the downstream Sanford Dam suffered overtopping damage before breaching as well, causing areas even further downriver to be engulfed by floodwaters.

44. As a result of the cascading failure of the Edenville and Sanford Dams, more than 11,000 people living in Gladwin, Midland, and Saginaw Counties near Sanford Lake and the Tittabawassee River were forced to flee from imminent danger and seek higher ground. Many of their homes, businesses, and property have been destroyed. Thousands of others who have not evacuated or experienced property damage have nevertheless had their daily lives upended as the floodwaters continue to damage essential infrastructure in the area, such as bridges and roads, and have interfered with essential utilities services like sanitary sewage.

45. In many cases, evacuees fleeing the rising floodwaters were cast further into harm's way. Like the rest of the country, the State of Michigan was in the midst of the COVID-19 Pandemic, with restrictions in place on movement and economic activity that severely limited the ability of evacuees to find safety outside of their homes. In the words of Michigan Governor Gretchen Whitmer, "to go through this in the midst of a global pandemic is almost unthinkable."

46. On May 20, 2020, the day after the disaster, David E. Capka, P.E., Director Division of Dam Safety and Inspections of FERC wrote a letter to Boyce stating in part:

> Following the breach of the Edenville Dam, the Sanford Dam was overtopped by the increased inflow from the upstream breach. The overtopping flows led to a declaration of imminent failure by local authorities and triggered additional evacuation efforts. Due to the extensive damage to the projects and the region as a result of the floodwaters and the Edenville breach, **you are directed to fully lower the reservoirs behind Sanford Dam, Smallwood Dam, and Secord Dam in a safe manner as flows recede.** You are also directed to perform a dam safety inspection of these dams immediately and within 3 days after the flows recede. (Emphasis added).

47. On May 26, 2020, Mr. Capka wrote to Boyce again stating in part:

> We do understand that the right embankment at

> Sanford Dam (P-2785) was fully breached during the high flows resulting from the Edenville Dam breach. Therefore, the directive to safely draw down the Sanford reservoir is moot due to the inability of the project to retain the reservoir. **The drawdown requirements at both Secord (P-10809) and Smallwood (P-10810) have not changed and you must draw each down to the spillway crest at a minimum. These actions are necessary in order for possible dam safety issues at your projects to be assessed.** Depending on the results of the evaluations, you may be required to draw one or both reservoirs down further. It is your responsibility to ensure a safe drawdown rate based on all project factors, including embankment stability, spillway Project No. 2785 2 gate operations, and debris issues. You must not return either reservoir to "normal" levels until you have received authorization from FERC. (emphasis added)

48. As a result of the failure of the Edenville Dam, approximately 2,500 homes and buildings were damaged, approximately 150 of them catastrophically. The citizens and businesses of Gladwin, Midland, and Saginaw Counties are devastated. Their lives have been turned upside down, their homes and property destroyed, and their livelihoods ruined. The full scope of their losses has not yet come into view, and as the floodwaters recede, they face the growing uncertainty of months, if not years, of rebuilding and restoration.

49. In June 2020, the State of Michigan estimated that the economic harm from failure of the Boyce facilities exceeded $200 million.

50. This devastating event and the catastrophic consequences suffered by the communities harmed were entirely preventable because FERC indisputably knew for years that these Dams were inadequate, decrepit, unstable, unsafe, and would fail under predictable conditions, that Boyce should never have been licensed in the first place, and that Boyce was recalcitrant in its repeated refusal to take action to protect the public.

51. The calamity befalling the citizens and businesses of Gladwin, Midland, and Saginaw counties is the direct and foreseeable result of FERC's breach of its mandatory duty to ensure that before licensing Boyce it should determine if Boyce had the capacity and will to "manage, operate, and maintain the project safely." 16 U.S.C.§ 808(2).

52. The failure of the Edenville Dam and the damages it caused under these circumstances is also the direct and foreseeable consequence of FERC's breach of its mandatory duty not to license, or to allow a license to continue, when it judges that the project is not best adapted to a comprehensive plan for flood control. 16 U.S.C. 803(a)(1). FERC failed in this mandatory duty by allowing Boyce to maintain its license long after determining that Boyce did not satisfy those standards.

## PLAINTIFFS

53. Plaintiff, TINA REINIG, is an individual with a property located at 3919 Pfeiffer Court, Midland, MI 48640.

54. Plaintiff, GLORIA GROVER, is an individual with a property located at 7021 Ronald Drive, Saginaw, MI 48609.

55. Plaintiff, MARY MAY, is an individual with a property located at 3995 East Road, Saginaw, MI 48601.

56. Plaintiff, RAUL VELASCO JR., III is an individual with a property located at 7670 Trinklein Road, Saginaw, MI 48609.

57. Plaintiff, RICHARD WOLF, is an individual with a property located at 3824 N. Saginaw Road, Midland, MI 48640.

58. Plaintiffs, RONALD KIPFMILLER and VIVIAN KIPFMILLER, are individuals with a property located at 5732 Irene, Beaverton, MI 48612.

59. Plaintiff, MARK LICKTEIG, is an individual with a property located at 5431 Oakridge Drive, Beaverton, MI 48612.

60. Plaintiff, SHANE NICKERSON, is an individual with a property located at 11 Iota Place, Saginaw, MI 48638.

61. Plaintiff, TERRY VISNAW, is an individual with a property located at 1777 South River Road, Saginaw, MI 48609.

62. Plaintiff, KARIE DINGMAN, is an individual with a property located at 1038 South River Road, Saginaw, MI 48609.

63. Plaintiff, JOSEPH KRUEGER, is an individual with a property located at 5087 Wixom Drive, Beaverton, MI 48612.

64. Plaintiff, CLEORIA FRENCH, is an individual with a property located at 5245 Pheasant Run Drive, Apt. 3, Saginaw, MI 48638.

65. Plaintiff, LAWRENCE DUREK, is an individual with a property located at 3009 Pomranky Road, Midland, MI 48640.

66. Plaintiff, JARED BRUNER, is an individual with a property located at 517 Bark Lane, Midland, MI 48640.

67. Plaintiff, LORI FEINAUER, is an individual with a property located at 2408 Pomranky Road, Midland, MI 48640.

68. Plaintiff, MARQUETTA MAXWELL, is an individual with a property located at 5395 South Oakridge Drive, Beaverton, MI 48612.

69. Plaintiff, TEAL SAYLOR, is an individual with a property located at 6007 Perrine Road, Midland, MI 48640.

70. Plaintiff, JODY ROGERS RODRIGUEZ, is an individual with a property located at 537 Birch Street, Gladwin, MI 48624.

71. Plaintiff, TERRA DESHIELDS, is an individual with a property located at 1395 S. Center Road, Saginaw, MI 48638.

72. Plaintiffs, JAMES SMAZENKA and PAT SMAZENKA, are individuals with properties located in Midland County, Lincoln Twp., Ml with the following parcel IDs: 110-034-300-050-00, 110-034-400-010-00, and 110-034-300-010-00.

73. Plaintiff, WADE WHITE, is an individual with a property located at 210 Lincoln Street, Sanford, MI 48657.

74. Plaintiff, THOMAS SHEPHERD, is an individual with a property located at 575 West Saxton Road, Sanford, MI 48657.

75. Plaintiff, CARL SWARTHOUT, is an individual with properties located at 207 Main Street, Sanford, MI 48657; 961 Wild Cherry, Sanford, MI 48657; 887 Maplecrest, Sanford, MI 48657; 921 Telegraph, Sanford, MI 48657; 957 Telegraph, Sanford, MI 48657.

76. Plaintiff, TRI-CITY BLINDS, INC., is a Michigan Corporation with a business property located at 10976 W. Freeland Road, Freeland, MI 48623. Plaintiff, TIMOTHY APPLE, is an individual and the Resident Agent/President of Plaintiff, TRI-CITY BLINDS, INC.

77. Plaintiff, MELISSA WINCHELL, is an individual with a property located at 2 Iota Place, Saginaw, MI 48638.

78. Plaintiff, JUDY KOEPPLINGER, is an individual with a property located at 4798 Verity Road, Sanford, MI 48657.

79. Plaintiff, JORDAN EDWARDS, is an individual with a property located at 51056 Pheasant Run Drive, Apt. 6, Saginaw, MI 48638.

80. Plaintiff, JERRY VESPRINI, is an individual with a property located at 5172 Pleasant Drive, Beaverton, MI 48612.

81. Plaintiff, STEVE WHITE, is an individual with a property located at 210 Lincoln Street, Sanford, MI 48657.

82. Plaintiff, LYN KNAPP, is an individual with a property located at 2648 N. Peterson Drive, Sanford, MI 48657.

83. Plaintiff, WILLIAM VASICEK, is an individual with a property located at 945 Kaypat Drive, Hope, MI 48628.

84. Plaintiff, MICHAEL LANDON, is an individual with properties located at 5011 Stoney Creek Drive, Midland, MI 48640; and, 2624 Pomranky, Midland, MI 48640.

85. Plaintiffs, THOMAS CHARTRAND and LINDA CHARTRAND, are individuals with a property located at 39 E. Lakeshore Drive, Hope, MI 48628.

86. Plaintiff, MERLE LEMAIRE, is an individual with a property located at 7075 McCliggott, Saginaw, MI 48609.

87. Plaintiff, MARY WIELAND, is an individual with a property located at 7211 Terry Road, Saginaw, MI 48609.

88. Plaintiff, LAWRENCE JURKOWSKI, is an individual with a property located at 1275 Radov Drive, Gladwin, MI 48624.

89. Plaintiffs, JOHN MONROE and CORA MONROE, are individuals with a property located at 5394 Grouse Court, Beaverton, MI 48612.

90. Plaintiff, JAMES PLATKO, is an individual with a property located at 5250 Townhouse 7, Pheasant Run Drive, Saginaw, MI 48638.

91. Plaintiff, JAMES BRASSEUR, is an individual with a property located at 1180 N. River Road, Saginaw, MI 48609.

92. Plaintiff, DAN ABBE, is an individual with a property located at 5000 Perrine Street, Midland, MI 48640.

93. Plaintiff, DENZEL MARTIN, is an individual with a property located at 345 Twin Lake Road, Beaverton, MI 48612.

94. Plaintiff, GAIL HAK, is an individual with a property located at 7700 Trinklein Road, Saginaw, MI 48609.

95. Plaintiff, KEVIN STOKES, is an individual with a property located at 3007 Valorie Lane, Midland, MI 48640.

96. Plaintiff, JAMES McGUINNESS, is an individual with a property located at 7099 Albosta Drive, Saginaw, MI 48609.

97. Plaintiff, RUSSELL KLEINHANS, is an individual with a property located at 5335 Northern Trail, Beaverton, MI 48612.

98. Plaintiff, JENNIFER PHOUTRIDES, is an individual with properties located at 3901 Pfeiffer Court, Midland, MI 48640; and, 3903 Pfeiffer Court, Midland, MI 48640.

99. Plaintiff, JEFFREY ESCKILSEN, is an individual with a property located at 2901 South River Road, Saginaw, MI 48609.

100. Plaintiff, ARTHUR KICKLAND, is an individual with a property located at 520 W. Jessie Road, Sanford, MI 48657.

101. Plaintiff, R & C ENTERPRISES LIMITED INC. is a Michigan Corporation with a business property, Alex's Railside Restaurant, located at 201 W. Saginaw Road, Sanford, MI 48657. Plaintiffs, WILSON GUM, III, CINDY LONG and ROBERT LONG are individuals and the owners/operators of R & C ENTERPRISES LIMITED INC d/b/a Alex's Railside Restaurant.

102. Plaintiff, DIANA WILSON, is an individual with a property located at 1273 Radov Drive, Gladwin, MI 48624.

103. Plaintiff, RUTH FRANKLIN, is an individual with properties located at 4563 Lakeview Drive, Beaverton, MI 48612; and, Parcel 110-033-200-703-00, E. Wackerly Road, Sanford, MI.

104. Plaintiff, TIMOTHY BELL, is an individual with a property located at 5767 Enchanted Forest, Sanford, MI 48657.

105. Plaintiff, ALENE McCOY, is an individual with properties located at 4104 & 4108 Stonegate Drive, Midland, MI 48640.

106. Plaintiff, BHARATI SHARMA, is an individual with a property located at 3700 Moorland Drive, Midland, MI 48640.

107. Plaintiff, BILL DEHAAN, is an individual with a property located at 1151 Radov Drive, Gladwin, MI 48624.

108. Plaintiff, ROBERT ORRYS, is an individual with a property located at 526 Paradise, Beaverton, MI 48612.

109. Plaintiff, HOWARD LOGSDON, is an individual with a property located at 5351 Northern Trail, Beaverton, MI 48612.

110. Plaintiff, JAROD SCHALK, is an individual with a property located at 1894 E. Chippewa River Road, Midland, MI 48640.

111. Plaintiff, TDS PHARMACY, INC., is a Michigan Corporation with a business property located at 6895 Gratiot, Saginaw, MI 48609. Plaintiff, LEE SHELDON, is an individual and an owner/operator of TDS PHARMACY, INC.

112. Plaintiff, ELMER LaPERE, is an individual with a property located at 3918 Pfeiffer Court, Midland, MI 48640.

113. Plaintiff, WILLIAM PRECZEWSKI, is an individual with a property located at 3216 N. Gillhaven Court, Sanford, MI 48657.

114. Plaintiff, LEONARD WILLIS, is an individual with a property located at 1159 Radov Drive, Gladwin, MI 48624.

115. Plaintiff, TIMOTHY HAKES, is an individual with a property located at 213 E. Lakeshore Drive, Hope, MI 48628.

116. Plaintiff, KATHY PARRENT, is an individual with a property located at 207 N. Cedar, Sanford, MI 48657.

117. Plaintiff, JOSEPH KOZLOWSKI, is an individual with properties located at 301 Hope Twp. Road, Hope, MI 48628 and, 301 Richmond Drive, Hope, MI 48628.

118. Plaintiff, BARBARA McLEAN, is an individual with a property located at 5005 Perrine, Midland, MI 48640.

119. Plaintiffs, DAVID GLESNER and DAWN GLESNER, are individuals with a property located at 7418 Oswegathie Lane, Hope, MI 48628.

120. Plaintiff, KEVIN GREEN, is an individual with a property located at 987 Mohegan Drive, Hope, MI 48628.

121. Plaintiff, PHILLIP MAXWELL, is an individual with a property located at 5491 Knollwood, Beaverton, MI 48612.

122. Plaintiff, HELEN JOHNSON, is an individual with a property located at 756 River Terrace, Gladwin, MI 48624.

123. Plaintiff, JANE DARBY, is an individual with a property located at 3211 Valley Drive, Midland, MI 48640.

124. Plaintiffs, RONALD KRAWIEC and RITA KRAWIEC, are individuals with a property located at 572 W. Chippewa Court, Sanford, MI 48657.

125. Plaintiff, TERRY THOMPSON, is an individual with a property located at 394 W. Center Street, Sanford, MI 48657.

126. Plaintiff, SIDNEY CASE, is an individual with a property located at 342 Island Drive, Beaverton, MI 48612.

127. Plaintiff, DAVID BURKHART, is an individual with a property located at 3898 South Lake Drive, Beaverton, MI 48612.

128. Plaintiff, PAUL IDZIKOWSKI, is an individual with properties located at 2276 North Hope Road, Midland, MI 48642, and parcels 110-009-304-001-21, 110-280000-001-00, 110-280000-003-00, 110-280000-004-00 and 110-280000-007-00 in Gladwin County.

129. Plaintiff, JUDITH MARSH, is an individual with a property located at 4291 Lake Drive, Beaverton, MI 48612.

130. Plaintiff, BARTON JONES, is an individual with a property located at 4201 Moorland Drive, Midland, MI 48640.

131. Plaintiff, SUGENDRINI PONNAMPALAM, is an individual with properties located at 1226 Asbury Court, Saginaw, MI 48602; and, 1228 Asbury Court, Saginaw, MI 48602.

132. Plaintiff, ANN LAZZARO, is an individual with a property located at 35 E. Lakeshore Drive, Hope, MI 48628.

133. Plaintiff, DOUGLAS ARNOLD, is an individual with a property located at 5211 Ostlund, Hope, MI 48628.

134. Plaintiff, WILLIAM DURAND, is an individual with a property located at 5301 M-30, Beaverton, MI 48612.

135. Plaintiff, DINO VESPRINI, is an individual with a property located at 2966 S. Whitney Beach Road, Beaverton, MI 48612.

136. Plaintiffs, LANCE COOK and JILL COOK, are individuals with a property located at 3401 Marvo Court, Midland, MI 48640.

137. Plaintiff, KELSEY FINNEY, is an individual with a property located at 1410 S. Center Road, Apt. 4, Saginaw, MI 48638.

138. Plaintiff, JEFFREY GREEN, is an individual with properties located at 997 E. Mohegan Drive, Hope, MI 48628; and, 994 E. Wauregan Drive, Hope, MI 48628.

139. Plaintiff, TRACY SCHOLTZ, is an individual with a property located at 6975 Midland Road, Freeland, MI 48623.

140. Plaintiff, ASA MAY, is an individual with a property located at 3001 Gibson Street, Midland, MI 48640.

141. Plaintiff, JANET GULLIFORD, is an individual with a property located at 4039 Cobblestone Court, Beaverton, MI 48612.

142. Plaintiff, MARY HUNTLEY, is an individual with a property located at 5720 Island Drive, Beaverton, MI 48612.

143. Plaintiff, LYLE BINIECKI, is an individual with a property located at 578 W. Chippewa Court, Sanford, MI 48657.

144. Plaintiff, MARK BURCH, is an individual with a property located at 1894 E. Chippewa River Road, Midland, MI 48640.

145. Plaintiff, ROBIN O'DELL, is an individual with a property located at 3009 Pomranky Road, Midland, MI 48640.

146. Plaintiff, PATRICIA PUNG, is an individual with a property located at 815 W. Maplecrest Drive, Sanford, MI 48657.

147. Plaintiff, JOHN LUESING, is an individual with a property located at 6955 Midland Road, Freeland, MI 48623.

148. Plaintiff, ROBERT MATHIS, is an individual with a property located at 3534 Arapahoe Trail, Beaverton, MI 48612.

149. Plaintiff, DENISE BOMAN, is an individual with properties located at 5442 Heron Cove Court, Beaverton, MI 48612; and, 3404 Clendening Road, Gladwin, MI 48624.

150. Plaintiff, ROBERT HOFFMAN, is an individual with a property located at 4180 Bay View Drive, Beaverton, MI 48612.

151. Plaintiff, BARBARA SCHOMER, is an individual with a property located at 4327 Wieman, Beaverton, MI 48612.

152. Plaintiff, LAWRENCE PIOTROWSKI, is an individual with a property located at 5271 Grouse Court, Beaverton, MI 48612.

153. Plaintiff, DEBORA MEYER, is an individual with a property located at 7230 London Drive, Saginaw, MI 48609.

154. Plaintiff, TODD MUNGER, is an individual with a property located at 1075 N. 7 Mile, Sanford, MI 48657.

155. Plaintiffs, EVELYN DARK and SCOTT DARK, are individuals with a property located at 956 Pudlow Lane, Hope, MI 48628.

156. Plaintiffs, DONNA LEE ATHERTON and GEORGE ATHERTON, are individuals with a property located at 728 Hayes, Beaverton, MI 48612.

157. Plaintiff, STEVEN PARKHURST, is an individual with a property located at 4304 Oakridge Drive, Midland, MI 48640.

158. Plaintiff, LARRY GRELL, is an individual with a property located at 1121 Brushaber Road, Hope, MI 48628.

159. Plaintiff, LOREN WALDIE, is an individual with a property located at 597 Quillette, Beaverton, MI 48612.

160. Plaintiff, PATRICIA LAWRENCE, is an individual with a property located at 4708 Poplar Drive, Hope, MI 48628.

161. Plaintiff, FRANK HEAD, is an individual with a property located at 2165 South Hillside Drive, Beaverton, MI 48612.

162. Plaintiff, BRIAN DANKERT, is an individual with a property located at 2512 N. Peterson Drive, Sanford, MI 48657.

163. Plaintiff, MARIA URSUY, is an individual with a property located at 7245 Ronald Drive, Saginaw, MI 48609.

164. Plaintiff, JAMES FROST, is an individual with a property located at 200 Adams Road, Saginaw, MI 48609.

165. Plaintiff, STEVEN MILLS, is an individual with a property located at 1750 South Whitney Road, Beaverton, MI 48612.

166. Plaintiff, RONALD BOWMAN, is an individual with a property located at 770 Kathy Court, Beaverton, MI 48612.

167. Plaintiff, KAREN SANDERS, is an individual with a property located at 885 South River Road, Saginaw, MI 48609.

168. Plaintiff, KEITH POPOUR, is an individual with a property located at 5376 Grouse Court, Beaverton, MI 48612.

169. Plaintiff, DWAYNE DRYS, is an individual with a property located at 4990 Wildwood Trail, Alger, MI 48610.

170. Plaintiff, ANDREA JAMROG, is an individual with a property located at 6518 Birchview Drive, Saginaw, MI 48609.

171. Plaintiff, ROY CURLEY, is an individual with a property located at 213 South Cedar, Sanford, MI 48657.

172. Plaintiff, GLORIA TAYLOR, is an individual with a property located at 2840 N. River Road, Saginaw, MI 48609.

173. Plaintiff, RODNEY FROST, is an individual with a property located at 6590 Stroebel Road, Saginaw, MI 48609.

174. Plaintiff, CHARLES WALKER, is an individual with a property located at 5315 M-30, Beaverton, MI 48612.

175. Plaintiff, MARJORIE McFARLANE, is an individual with a property located at 3307 Pine Grove Drive, Midland, MI 48640.

176. Plaintiff, JACK KELLY, is an individual with a property located at 1328 Rubyann Drive, Saginaw, MI 48601.

177. Plaintiff, JANET STOIKE, is an individual with a property located at 1053 McKimmy Drive, Beaverton, MI 48612.

178. Plaintiff, VALERIE WALTERS, is an individual with a property located at 6867 Stroebel Road, Saginaw, MI 48609.

179. Plaintiff, SHEILA CASE, is an individual with a property located at 5499 Knollwood Drive, Beaverton, MI 48612.

180. Plaintiff, CHRIS WAGNER, is an individual with a property located at 1063 McKimmey Drive, Beaverton, MI 48612.

181. Plaintiff, CHARLES BIRDEN, is an individual with a property located at 2880 Evon Road, Saginaw, MI 48601.

182. Plaintiff, JAMES SIMON, is an individual with a property located at 5459 Knollwood Drive, Beaverton, MI 48612.

183. Plaintiff, ROBERT McMANUS, is an individual with a property located at 620 W. Sundown Trail, Sanford, MI 48657.

184. Plaintiff, BARBARA WARNER, is an individual with a property located at 3607 Wieman Road, Beaverton, MI 48612.

185. Plaintiff, CURT SEITZ, is an individual with a property located at 457 Richmond Road, Hope, MI 48628.

186. Plaintiff, TIMOTHY PENNINGTON, is an individual with a property located at 3561 Pineland, Gladwin, MI 48624.

187. Plaintiff, PETRINA RICE, is an individual with a property located at 4116 Reed Court, Gladwin, MI 48624.

188. Plaintiff, AMY SCHNEIDER, is an individual with a property located at 4170 Bay Avenue, Beaverton, MI 48612.

189. Plaintiff, ROBERT BUNKER, is an individual with a property located at 4050 Cayley Court, Gladwin, MI 48624.

190. Plaintiff, SHARON PARKER, is an individual with a property located at 4211 Bluebird Drive, Midland, MI 48640.

191. Plaintiff, ROBERT MASON, is an individual with a property located at 5290 North Lake Sanford Road, Sanford, MI 48657.

192. Plaintiff, BARBARA LOOMIS, is an individual with a property located at 555 E. Sun Oil Road, Gladwin, MI 48624.

193. Plaintiff, KIMBERLY POHL, is an individual with a property located at 2590 N. Lakeview Drive, Sanford, MI 48657.

194. Plaintiff, WAYNE MITCHELL, is an individual with a property located at 4175 Wieman Road, Beaverton, MI 48612.

195. Plaintiff, JAMES BRUBAKER, is an individual with a property located at 4852 Hill Drive, Beaverton, MI 48612.

196. Plaintiffs, ROBERT YOUNGBLOOD and CAROL YOUNGBLOOD, are individuals with a property located at 5980 N. Lake Sanford Road, Sanford, MI 48657.

197. Plaintiff, EMILY SIMBECK, is an individual with a property located at 4671 Henry Road, Beaverton, MI 48612.

198. Plaintiff, BRUCE RICH, is an individual with a property located at 5340 N. Lake Sanford Road, Sanford, MI 48657.

199. Plaintiff, DAVID ALEXANDER, is an individual with a property located at 476 Lakewood Drive, Gladwin, MI 48624.

200. Plaintiff, EDITH MASON-MEAD, is an individual with a property located at 933 Wauregan Drive, Hope, MI 48628.

201. Plaintiff, GORDON HUCKINS, is an individual with properties located at 5786 M-30, Beaverton, MI 48612; and, 4863 Hill Drive, Beaverton, MI 48612.

202. Plaintiff, LESLIE TRELFA, is an individual with a property located at 3845 Pine, Beaverton, MI 48612.

203. Plaintiff, RICHARD WARE, is an individual with a property located at 561 West Wixom Road, Sanford, MI 48657.

204. Plaintiff, KENNETH MADISON, is an individual with a property located at 3957 East Street, Saginaw, MI 48601.

205. Plaintiff, ANDREA ZOMERFELD, is an individual with properties located at 3903 Pine, Billings Twp., MI 48612; 3899 Pine, Billings Twp., MI 48612; and, 3898 Pine, Billings Twp., MI 48612.

206. Plaintiff, DONNA SZYMANSKI, is an individual with a property located at 5479 Marilyn Drive, Sterling, MI 48659.

207. Plaintiff, JILL COUCH, is an individual with a property located at 533 West Leonard Street, Sanford, MI 48657.

208. Plaintiff, SANDRA HEWITT, is an individual with a property located at 5291 Oakridge Drive, Beaverton, MI 48612.

209. Plaintiff, RONALD SCHWENN, is an individual with a property located at 300 Ash Street, Gladwin, MI 48624.

210. Plaintiff, CYNTHIA PACKARD, is an individual with a property located at 3587 Lakeview Drive, Beaverton, MI 48612.

211. Plaintiff, SUSAN KLICH, is an individual with a property located at 5408 Sturgeon Avenue, Midland, MI 48640.

212. Plaintiff, PRICILLA COREY, is an individual with a property located at 5295 Heron Cove, Beaverton, MI 48612.

213. Plaintiff, MARK TRANCYGIER, is an individual with a property located at 5287 Oakridge Drive, Beaverton, MI 48612.

214. Plaintiff, JOHN J. FREHLING, is an individual with properties located at 3490 Spicer Drive, Saginaw, MI 48603; and, 191 Pinelands Point 1, Lot 127, Gladwin, MI 48624.

215. Plaintiff, RAYMOND DARABOS, is an individual with a property located at 4149 South Oak Drive, Beaverton, MI 48612.

216. Plaintiff, JOHN E. FREHLING, is an individual with a property located at 3563 West Pinelands Point Rd., Gladwin, MI 48624.

217. Plaintiff, BRIAN COONS, is an individual with a property located at 823 Quillette, Beaverton, MI 48612.

218. Plaintiff, JAMES BLIMKA, is an individual with a property located at 985 W. Telegraph Road, Sanford, MI 48657.

219. Plaintiff, HARRY NOWACKI, is an individual with a property located at 4401 Reed Court, Gladwin, MI 48624.

220. Plaintiff, GREGORY PAXTON, is an individual with a property located at 3245 Douglas Drive, Sanford, MI 48657.

221. Plaintiff, RALPH BURKE, is an individual with a property located at 1410 South Center Road, Apt. 1, Saginaw, MI 48638.

222. Plaintiff, CHRIS TORBET, is an individual with a property located at 1720 Maple Point Road, Beaverton, MI 48612.

223. Plaintiff, BETTY ATHEY, is an individual with a property located at 4689 N. Verity Shore Road, Sanford, MI 48657.

224. Plaintiff, CHAD CHANDLER, is an individual with a property located at 3510 Pinecrest Drive, Gladwin, MI 48624.

225. Plaintiff, JANET KNAPP, is an individual with a property located at 930 W. Genesee Road, Sanford, MI 48657.

226. Plaintiff, RUSSELL JINKS, is an individual with a property located at 3540 Arapahoe Trail, Beaverton, MI 48612.

227. Plaintiff, RANDY ZDENEK, is an individual with a property located at 5449 South Pine Street, Beaverton, MI 48612.

228. Plaintiff, DIANE DYMCZEK, is an individual with a property located at 5394 Oakridge Drive, Beaverton, MI 48612.

229. Plaintiff, MICHELLE DOEDE, is an individual with a property located at 3920 N. West River Road, Sanford, MI 48657.

230. Plaintiff, JENNA POST, is an individual with a property located at 920 W. Genesee Road, Sanford, MI 48657.

231. Plaintiff, CRAIG KULESZA, is an individual with a property located at 3928 East Thendara Drive, Gladwin, MI 48624.

232. Plaintiffs, GORDON BIRKMEIER and PATRICIA BIRKMEIER, are individuals with properties located at East Shoreline Drive, Lots 24 and 24A, Hope, MI 48628.

233. Plaintiff, GARY NORTH, is an individual with a property located at 5832 M-30, Beaverton, MI 48612.

234. Plaintiff, JOHN JUCIUS, is an individual with a property located at 3326 N. Lakeside Drive, Sanford, MI 48657.

235. Plaintiff, CATHY SCHILINSKI, is an individual with a property located at 3358 East Pinecrest, Gladwin, MI 48624.

236. Plaintiff, ROBERT FRANKS, JR., is an individual with a property located at 5447 Westside Drive, Alger, MI 48610.

237. Plaintiff, TIMOTHY WESSON, is an individual with a property located at 551 Manzer Road, Beaverton, MI 48612.

238. Plaintiff, JOHN MONTGOMERY, is an individual with a property located at 3579 Pineland Point, Gladwin, MI 48624.

239. Plaintiff, CHARLES STEFFEY, is an individual with a property located at 3008 St. Mary's Drive, Midland, MI 48640.

240. Plaintiff, SANDRA BURNHAM, is an individual with a property located at 555 W. Margaret, Sanford, MI 48657.

241. Plaintiff, CHRISTENE HILL, is an individual with a property located at 347 Twin Lake Road, Beaverton, MI 48612.

242. Plaintiff, R. DEAN COOPER, is an individual with a property located at 4300 West Main Street, Midland, MI 48640.

243. Plaintiff, RUTH ANN BAZZANI, is an individual with a property located at 1373 Sioux Street, Gladwin, MI 48624.

244. Plaintiff, DAVID CHARBONNEAU, is an individual with a property located at 3600 Arapahoe Trail, Beaverton, MI 48612.

245. Plaintiff, YVONNE MARTIN, is an individual with a property located at 1383 Sioux Street, Gladwin, MI 48624.

246. Plaintiff, ANTHONY PIWOWARSKI, is an individual with properties located at 5575 Mangus Road, Beaverton, MI 48612 and 3236 Southfield Drive, Saginaw, MI 48601.

247. Plaintiff, IRENE PIWOWARSKI, is an individual with a property located at 5555 Mangus Road, Beaverton, MI 48612.

248. Plaintiff, THOMAS STADLER, is an individual with a property located at 5375 West Side Drive, Alger, MI 48610.

249. Plaintiff, MARTIN BONNER, is an individual with a property located at 663 South Lincoln Road, Bay City, MI 48708.

250. Plaintiff, SHAWN INGLES, is an individual with a property located at 5001 Wixom Drive, Beaverton, MI 48612.

251. Plaintiff, MARK MARTIN, is an individual with a property located at 424 Red Oak, Beaverton, MI 48612.

252. Plaintiff, ARTHUR DUBAY, is an individual with a property located at 278 Lee Road, Beaverton, MI 48612.

253. As a direct and proximate result of Defendant's failures/negligence, the aforementioned Plaintiffs have sustained substantial damages, including, but not limited to property damage, property destruction, loss of income, loss of use, loss of business, loss of access, loss of value, personal injury, emotional distress and other damages that may be determined through discovery.

**COUNT I**

**Violation of 16 U.S.C. §§ 803 and 808: Negligent Entrustment - FERC Failed in its Mandatory Duty to License a Dam Operator Only if it Determines that the Proposed Operator Can Operate the Dam Safely**

254. The failure of the Edenville Dam was not inevitable and, but for Defendant FERC's decision to entrust the Dam to Boyce without vetting, the disaster could have been avoided.

255. Defendant FERC negligently entrusted the Dam to Boyce by granting Boyce a license without following the mandatory pretransfer investigation and approval process.

256. Defendant's decision to entrust the Dam to Boyce, in the first instance, renders Defendant liable for negligent entrustment under Michigan law.

257. On the day that the Edenville Dam collapsed, FERC and the Michigan Department of Environment, Great Lakes, and Energy ("EGLE") jointly regulated the hydroelectric power dams on Wixom, Secord, Smallwood

and Sanford Lakes (Four Lakes).

258. FERC, for 27 years before May 19, 2020, knew that the unrepaired Edenville Dam was a dangerous instrumentality that posed a grave risk of harm to Michigan residents and property owners living downstream.

259. FERC had a mandatory duty under the Federal Power Act ("FPA") and its regulations to determine whether Boyce, as operator of the Four Lakes hydroelectric dam operations, had the financial ability and expertise to "manage, operate, and maintain the project safely." 16 U.S.C.§ 808(2)(B).

260. FERC granted Boyce a license to operate the Edenville Dam in 2007 without making this mandatory assessment.

261. If FERC had made the required assessment, it would not have negligently entrusted the operation of the dam to Boyce.

262. At that time, and throughout the entirety of FERC's exercise of jurisdiction over it, the Edenville Dam was rated by FERC as a "High Hazard Dam" because its failure would cause loss of human life.

263. When FERC transferred the license to Boyce it knew it was permitting it to be the operator of a dangerous instrumentality unless the necessary repairs and upgrades were made.

264. On June 18, 2020, FERC Chairman Neil Chatterjee admitted in testimony before Congress that FERC had issued a license to Boyce to operate

the Edenville Dam without complying with its mandatory statutory obligation to first determine if it could manage, operate, and maintain the dam safely.

265. Within a short time after receiving its license to operate, Boyce, through its flagrant non-compliance with FERC orders to make the Edenville Dam safe, demonstrated to FERC that it did not have the financial resources, know-how, willingness, or good faith motivation to eliminate the characteristics of the dam which made it a dangerous instrumentality or to carry out its operations safely.

266. The collapse of the Edenville Dam on May 19, 2020 was the direct result of FERC's failure to comply with the legal mandate to grant a license only to a financially sound and competent operator who would operate a High Hazard Dam safely. If FERC had followed its mandate, the disaster would not have occurred because Boyce would not have been granted a license.

267. Boyce's repeated recalcitrance, unwillingness, or inability to repair, operate and maintain the Dam in a safe manner caused the Dam to collapse. FERC's negligent failure to comply with its mandatory duty to determine Boyce's fitness to operate the dam is a direct and proximate cause for the injuries and damages experienced by Plaintiffs.

268. The Federal Tort Claims Act provides that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the

same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C.§ 267.

269. Michigan recognizes the tort doctrine of negligent entrustment. The two elements of the tort are that the entrustor (FERC) negligently entrusted the dangerous instrumentality (Edenville Dam) to the entrustee (Boyce) and the entrustee (Boyce) negligently or recklessly misused the instrumentality. *Allstate Ins. Co. v. Freeman*, 160 Mich. App. 349, 357, 408 N.W.2d 153 (1987), aff'd 432 Mich. 656, 443 N.W.2d 734 (1989), mod 433 Mich. 1202, 446 N.W.2d 291 (1989).

270. FERC had a mandatory duty to grant Boyce a license in the first instance only if it determined that Boyce was fit to operate a High Hazard Dam safely. FERC never fulfilled this mandatory statutory obligation.

271. The Edenville Dam was rated a High Hazard dam and in failing to follow this statutory mandate, FERC negligently entrusted the ultra-hazardous activity to Boyce who recklessly misused its license.

272. A reasonably prudent licensor would have required Boyce to make the necessary upgrades and repairs to render the dam safe *before* it issued Boyce a license.

273. In addition, FERC violated its mandatory duty as a licensor every day that it allowed Boyce to continue operating the Edenville Dam under a federal license despite knowing that Boyce did not maintain the project in a manner best adapted to a comprehensive plan for flood control. 16 U.S.C. § 803(a)(1).

274. FERC is therefore liable for the damages it caused by entrusting the operation of a High Hazard dam to an unfit and reckless dam operator in the first instance (in violation of FERC's mandatory duties under § 808) and by continuing to permit the licensee to operate the dam in a manner that was not suited to a plan for flood control (in violation of FERC's mandatory duties under § 803).

**COUNT II**

**Violation of 16 U.S.C. § 823b: FERC Failed in its Mandatory Duty to Monitor the Integrity of Dams Under its Jurisdiction-Negligence**

275. The FPA, 16 U.S.C. § 823b, provides that the "Commission [FERC] shall monitor and investigate compliance with each license and permit issued under this subchapter…"

276. This duty to "monitor" includes the obligation to monitor the integrity of dams under its jurisdiction.

277. Prompt detection and evaluation of information from

instrumentation and physical monitoring is critical to a timely emergency response.

278. When a dam is not continuously attended and an incident could endanger life or cause significant property damage, it is imperative that instrumentation be installed and/or procedures developed to monitor the conditions of the facility.

279. To promptly identify and notify emergency management authorities of emergency conditions, FERC has a mandatory statutory obligation to work with the dam owner and co-jurisdictional authorities to detect, confirm and evaluate developing conditions.

280. This obligation may include the installation of remote surveillance systems that include instrumentation for continuous monitoring of conditions.

281. At the time of the Edenville Dam collapse, despite these mandatory requirements, FERC and Boyce had in place either inadequate or non-existent emergency surveillance and monitoring instrumentation or procedures and it was this failure which contributed to the dam's demise.

282. In the days and weeks prior to the failure of the Edenville Dam, FERC was aware of the weather reports for the Midland Region, and notwithstanding its knowledge of the dangers posed by excessive rainfall, failed to use ordinary care in carrying out its mandatory obligation to monitor the

integrity of dam structures under its jurisdiction. As a result of this negligence, Plaintiffs experienced a substantial loss of property and other damages.

283. In recognition of this obligation to monitor dam integrity, FERC on May 20, 2020, the day after the Edenville Dam collapse, ordered Boyce to lower the water level of Sanford, Smallwood and Secord reservoirs.

284. FERC had the authority to order Boyce to draw down the reservoirs of the Smallwood, Secord and Sanford dams as demonstrated by the May 20, 2020 post Edenville Dam collapse orders of FERC Engineer Mr. Capka.

285. Had FERC exercised this authority to order a draw down in a competent and non-negligent manner before May 20, 2020, the Edenville Dam disaster could have been prevented.

286. FERC's failure to exercise its authority to order a draw down directly caused the catastrophic flooding that resulted from the failure of the Edenville Dam.

## REQUEST FOR RELIEF

Accordingly, Plaintiffs request an order awarding all Plaintiffs damages for the property damage, emotional distress and other injuries caused by FERC's negligence as described above.

Respectfully submitted,

BUCKFIRE LAW FIRM

_/s/ Michael J. Bonvolanta_
MICHAEL J. BONVOLANTA (P80038)
ROBERT J. LANTZY (P57013)
Buckfire & Buckfire, P.C.
Attorneys for Plaintiffs
29000 Inkster Road, Suite 150
Southfield, MI 48034
(248) 569-4646
(248) 569-6737 (fax)
michael@buckfirelaw.com
robert@buckfirelaw.com

Dated: March 22, 2023